IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


DAVID AGOSTINO,                    )
                                   )
         Plaintiff,                )
                                   )
      v.                           )          Civil Action No. 08-1527
                                   )
                                   )
COLLIER TOWNSHIP,                  )
                                   )
         Defendant.                )


REPORT AND RECOMMENDATION

I. Recommendation

Presently before the court is Defendant, Collier Township's ("the Township"), motion for summary judgment as to Plaintiff, David Agostino's ("Agostino"), claim that his honorable discharge from the Collier Township Police Department violated the Americans With Disabilities Act, 42 U.S.C. §12101,("ADA") and the Pennsylvania Human Relations Act, 43 P.S. § 955(a) ("PHRA"). It is respectfully recommended that the Township's motion for summary judgment (Docket No. 31) be granted.

II. Report

A. Factual and Procedural History

On August 15, 2004, Agostino, a Collier Township police officer, was seriously injured in an off-duty motorcycle accident. One of his injuries was anosmia, the loss of the

1

ability to smell.  Approximately one year later, after undergoing a physical exam, Agostino resumed his position with the Township Police Department in an administrative capacity.  Agostino was eventually certified by the Municipal Police Officers' Education and Training Commission ("MPOETC") to return to full duty.

On October 10, 2006, Rick Lamb, another Collier Township police officer and the then-President of the Collier Township Police Association, sent an email to Collier Township Chief of Police Dan Rearick informing him that Agostino admitted to other officers that he had lost his sense of smell.  The email expressed concern that Agostino's inability to smell would impede performance of his police duties and could be a possible threat to the safety of the public, his fellow police officers, and other first responders.

On March 13, 2007, the Collier Township Board of Commissioners voted to honorably discharge Agostino because his inability to smell was a "physical or mental disability affecting his ability to continue in service. . . ."  53 P.S. §55644(1); Collier Township Civil Service Rules and Regulations, Section 6.1(a)(1).  Agostino appealed his discharge to the Civil Service Commission of the Township of Collier.

A hearing was held before the Commission on July 19, 2007 to review whether Agostino's inability to smell rendered him unable to perform his police duties.  At the hearing, the

Township presented medical evidence that Agostino's anosmia was likely permanent, and testimony from various police officers concerning the possible dangers associated with an officer responding to a situation where he could not smell. Agostino testified on his own behalf and advocated a position that the sense of smell is not essential to performance as a police officer, offering that the provisions of the First Class Township Code and the Collier Township Civil Service Rules and Regulations relating to dismissal do not specify that discharge is warranted by an inability to smell. Agostino also suggested to the Township solicitor that if the Township was concerned about his inability to smell, it should provide him with a K-9 dog. According to Agostino, the solicitor informed him that the Township would not consider this request.

The Commission affirmed the decision to discharge Agostino, finding that the evidence demonstrated "the need of the sense of smell in instances where the police officer is the first responder, or/and where the officer is the person responsible to determine the propriety of further investigation or arrest." Decision of the Civil Service Commission of the Township of Collier, October 3, 2007, Finding of Fact No. 10. Regarding the possibility of Agostino's assignment to duties not requiring a sense of smell, the Commission noted that it did not have authority to determine claims arising under the Americans with

Disability Act. <u>Id</u>. at 8, n.1.[1]

Agostino appealed the decision of the Commission to the Court of Common Pleas of Allegheny County.  Agostino claimed that the Commission erred when it: 1)disregarded evidence that he was able to perform his duties by compensating for his lack of smell; 2)accepted the opinion testimony of certain witnesses; 3)disregarded the fact that the ability to smell is neither listed as an essential function in a police officer's job description nor is it included in an officer's physical examination; and, 4) applied an improper standard of proof when rendering its decision.

After examining the record with deference to the Commission's decision, the common pleas court determined that credible and persuasive testimony was presented to the Commission that the ability to smell was crucial to a police officer's performance of his duties and that Agostino's permanent loss of this sense rendered him unable to continue as a police officer. <u>Agostino v. Township of Collier</u>, CP Allegheny, SA No. 07-1244, September 5, 2008, at 3.

---

[1]
The Commission made no reference to its authority to consider claims arising under the PHRA, however, since the Pennsylvania Human Relations Commission has exclusive jurisdiction to hear and determine claims of discrimination in violation of the PHRA, <u>see</u> <u>Murphy v. Cartex Corporation</u>, 546 A.2d 1217, 1223 (Pa.Super. 1988), it is assumed that Agostino's PHRA claim was likewise beyond the adjudicatory reach of the Commission.

Agostino next appealed to the Commonwealth Court which affirmed the decision of the court of common pleas. On the question of whether substantial evidence supported the Township's honorable discharge of Agostino, the Commonwealth Court held that:

> [T]he Commission relied upon competent, credible evidence and testimony that established that Agostino lost his sense of smell, that his loss was permanent and that the ability to smell was a critical component for a police officer in the performance of his duties and that a loss of smell hindered a police officer's ability to perform his duties.

Agostino v. Township of Collier, 968 A.2d 258, 264(Pa. Commw. 2009).

While his state court action was pending before the Commonwealth Court, Agostino commenced the present federal action alleging that his discharge violated the ADA and PHRA. After the Commonwealth Court announced its decision, the Township filed a motion for judgment on the pleadings averring that the state court judgment precluded Agostino's federal action based on the ADA and his state PHRA action.

On June 24, 2009, this court issued a Report and Recommendation denying the motion because the state courts did not have jurisdiction to adjudicate Agostino's ADA/PHRA claim, therefore, principles of issue preclusion and/or claim preclusion did not foreclose continued litigation of his federal disability discrimination lawsuit. On July 20, 2009, the District Court entered an order adopting the Report and Recommendation. When

discovery closed, the Township filed the motion for summary judgment presently before the court.

       B.  <u>Summary Judgment Standard</u>

       Under Fed.R.Civ.P.56(c), "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law[,]" summary judgment should be granted. The threshold inquiry is whether there are any genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250(1986). A court may grant summary judgment if the non-moving party fails to make a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322(1986). In making this determination, the non-moving party is entitled to all reasonable inferences. <u>Lawrence v. City of Philadelphia</u>, 527 F.3d 299, 310 (3d Cir. 2008). A court may not, however, make credibility determinations or weigh the evidence in making its determination. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150(2000).

       C.  <u>Discussion</u>

       1.  <u>Issue Preclusion</u>

Initially, the Township resurrects its argument that collateral estoppel, or issue preclusion, precludes relitigation of whether the ability to smell is an essential function of a police officer position.

Collateral estoppel, also known as issue preclusion, disallows reexamination of an identical issue decided in a prior action. Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993). In determining the preclusive effect of a state court judgment, a court applies the rendering state's preclusion law. Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380(1985); Delaware River Port Authority v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002)

Under Pennsylvania law, issue preclusion applies where:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it was asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Greenleaf v. Garlock, Inc., 174 F.3d 352, 357-58 (3d Cir. 1999); Balent v. City of Wilkes-Barre, 542 Pa. 555, 564, 669 A.2d 309, 313 (1995).

There is no dispute that the second, third, and fourth criteria for issue preclusion have been fulfilled in this case. What remains to be resolved is whether the issue decided in the

prior state adjudication is identical to the present issue of whether Agostino has pled a cognizable ADA claim. Identity of issues is shown when "the same general legal rules govern both cases and the facts of both cases are indistinguishable as measured by those rules." Suppan v. Dadonna, 203 F.3d 228, 233 (3d Cir. 2000). The Township, as the moving party, has the burden of demonstrating the identity of the issues. Id.

Under the ADA, Agostino must prove that (1) he is disabled within the meaning of the ADA; (2) otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) has suffered an otherwise adverse employment decision as a result of discrimination. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).

The Township argues that the question before and decided unfavorably against Agostino by the Civil Service Commission - whether a sense of smell is necessary for a police officer to perform his duties - is the same question as whether Agostino is a "qualified individual with a disability" under the ADA. The ADA defines this term as an individual "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The EEOC Regulations define "essential functions" as the "fundamental duties of the employment position

8

the individual with a disability holds" and "does not include the
marginal functions of the position."  29 C.F.R. § 1630.2(n)(1).
The regulations also provide guidance as to whether a job function
is essential, including the employer's judgment as whether a
particular function is essential. 42 U.S.C. § 12111 (8).  Whether
a particular function is essential is a factual determination made
on a case by case basis.  <u>Turner v. Hershey Chocolate U.S.</u>, 440
F.3d 604, 612 (3d Cir. 2006).

    At the Civil Service Commission hearing, other police
officers testified about the possible dangers associated with an
officer responding to a situation where he could not detect
certain odors.  Also admitted as evidence was the email from
Officer Lamb to Chief of Police Rearick citing potential dangers
associated with an officer responding to an incident where he
could not smell i.e., hazardous material spills, natural gas and
propane leaks, DUI and drug situations, and accident scene
investigations. Based upon the evidence presented, the Commission
determined that a police officer, in his capacity as a first
responder and as the person responsible for deciding if further
investigation and arrest are necessary in particular situations,
needs a sense of smell to perform his duties.  This finding was
upheld by both the Court of Common Pleas of Allegheny County, <u>see</u>
<u>Agostino</u>, CP Allegheny, SA No. 07-1244, <u>id</u>. at 3 (credible and
persuasive testimony showed that ability to smell was crucial to

police officer's performance of his duties) and the Pennsylvania Commonwealth Court, see Agostino, 968 A.2d at 264(substantial evidence supported Township's discharge of Agostino).

In response to the Township's position that issue preclusion applies to the Commission's findings regarding the essential duties of a police officer, Agostino counters that the fact that Acting Police Chief Rearick, after receiving the email from Officer Lamb expressing concern about Agostino's inability to smell, reported to the Township Manager that Agostino was capable of performing basic law enforcement duties, indicates that Agostino's employer believed that he could perform his job. Agostino claims that this information was withheld from the Commission and, therefore, the issue of whether the sense of smell is essential for a police officer was not fully adjudicated by the state tribunals.

The court concludes that the disability issue litigated before the Commission and affirmed by the Pennsylvania courts is the same question as whether Agostino is otherwise qualified to perform the essential functions of his job under the ADA.  The Commission was charged with deciding whether Agostino's inability to smell prevented him from being capable of performing his duties as a police officer.  To show that he was an otherwise qualified individual under the ADA, Agostino must prove that a police officer does not need a sense of smell to perform the essential

functions of his job.  The Commission evaluated the same evidence that this court would review to decide the ADA essential function issue and the same legal standard for evaluating the evidence is employed by both fact-finding bodies.

Consideration of the additional evidence contained in Chief Rearick's report does not compel a different conclusion. First, the report was authored prior to receiving Dr. Snyderman's medical opinion that conclusively established that Agostino could not smell.  Second, the Township, not Chief Rearick, was Agostino's employer.  Finally, and most significantly, the evidence considered by the Commission strongly supports its conclusion that a police officer's sense of smell is integral to successful performance of his duties.  For this reason, issue preclusion prevents Agostino from contesting that he is unable to perform the essential functions of his job because of his disability.

2.  <u>Reasonable Accommodation</u>

The inquiry concerning Agostino's ADA claim next requires the court to decide if Agostino could perform the essential functions of his police officer employment with reasonable accommodation.  As earlier noted, a disabled employee may establish a prima facie ADA case if he can show that he can perform the essential functions of a job with reasonable accommodation and that the employer refused to make such an

accommodation.  <u>Skerski v. Time Warner Cable Company</u>, 257 F.3d 273, 284 (3d Cir. 2001).  Reasonable accommodation under the ADA can include "acquisition or modification of equipment or devices . . . ."  42 U.S.C. §12111(9)(B).  The relevant regulations also define reasonable accommodation as [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."  29 C.F.R. §1630.2(o)(1)(ii).

The question of whether a proposed accommodation is reasonable is a question of fact, <u>see</u> <u>Buskirk v. Apollo Metals</u>, 307 F.3d 160, 170 (3d. Cir. 2002), and the plaintiff has the burden to identify an accommodation, "the costs of which, facially, do not clearly exceed the benefits."  <u>Walton v. Mental Health Association of Southeastern Pennsylvania</u>, 168 F.3d 661,670 (3d Cir. 1999).  Summary judgment for the employer is granted only in those cases where the employee's proposed accommodation is "either clearly ineffective or outlandishly costly."  <u>Id</u>.

The employer and employee share a joint responsibility to determine what accommodations are reasonably necessary and possible.  The parties are expected to engage in a good faith interactive process to "'search for an appropriate reasonable accommodation and to act in good faith.'"  <u>Williams v. Philadelphia</u>

12

Housing Police Authority, 380 F.3d 751, 771 (3d Cir. 2004)(quoting Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)); See also 29 C.F.R. § 1630.2(o)(3)(may be necessary for employer to initiate interactive process to identify employee's limitations and potential reasonable accommodations). While the interactive process does not mandate that the employer make any particular concession or relieve the employee of his burden of identifying an appropriate accommodation,

> [a]n employee can demonstrate that an employer breached its duty to provide reasonable accommodations because it failed to engage in good faith in the interactive process by showing that:
>> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Williams, 380 F.3d at 772 (quoting Taylor v. Phoenixville School District, 184 F.3d 296, 319-20(3d. Cir. 1999).

Agostino claims that when he was advised that the Commission determined that his inability to smell rendered him unfit to perform as a police officer, he responded with a request to the Township's solicitor that the Township provide him with a K-9 dog. According to Agostino, the solicitor summarily dismissed the request, thus ending the dialog concerning reasonable

13

accommodation.

Viewing these facts favorably to Agostino, he has established that his employer knew of his disability and that Agostino requested a K-9 dog as an accommodation. Assuming the Township solicitor's perfunctory dismissal of the request can be attributed to the Township, it appears that the employer did not make a good faith effort to assist Agostino in seeking this accommodation. However, an employer's failure to engage in the interactive process does not, standing alone, violate the ADA. Holider v. United Parcel Service, Inc., 574 F.3d 169, 193(3d Cir. 2009). If an employee cannot show that a reasonable accommodation exists, then the employer's failure to engage in the interactive process is immaterial. Gaul v. Lucent Technologies, Inc, 134 F.3d 576, 581 (3d Cir. 1998).

Even with a favorable view of the evidence, Agostino cannot show that his request for a dog could have been reasonably accommodated except for the Township's lack of good faith. First, Collier Township has never had a K-9 officer nor has Agostino ever received K-9 officer training. The ADA does not mandate that employers create new positions to accommodate an employee's disability. Buskirk, 307 F.3d at 169. Also, the Township's expert, Joseph Stine, submitted a report detailing the start-up costs associated with a K-9 unit, totaling $26,000. Additional considerations include the time it takes to train the police

14

officer to handle the dog, its housing, feeding and medical expenses, and the $25,000 cost of a special vehicle equipped for the police officer and the dog.  Stine also reports that very few K-9 dogs are trained in multiple areas, rather they tend to have specialized skills.[2]

---

[2]

     In Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, Agostino objects to, inter alia, the portion of Stine's report referring to the costs associated with buying, training, and caring for a K-9 dog because it represents an opinion of an expert not previously identified through initial disclosure or discovery and because the report played no role in the Commission's decision to terminate him.  For these reasons, Agostino "moves to strike these assertions for failure to comply with the Court's discovery Orders and because they are irrelevant and immaterial to actions taken by Defendant regarding Plaintiff's termination."  Pl.'s Res. To Def.'s Statement of Facts, ¶¶ 61 through 69 and 78 through 95 (Document No. 36).

     Agostino does not identify the particular discovery order that the Township violated by submission of Stine's report nor did he file a formal motion to strike the assertions contained in the report.  Without such guidance, the court assumes that Agostino is complaining that Stine's report, dated December 14, 2009, was filed after the close of discovery which the court set as October 31, 2009 (Document No. 27).  While submission of Stine's report after the close of discovery represents a technical violation of the discovery order, Agostino was not prejudiced by the late filing as evidenced by his January 26, 2010 submission of a Supplemental Report of James Baranowski that specifically responded to the Stine report. Pl.'s Counter-Statement of Material Facts, Ex 2 (Document No. 37).

     As to Agostino's argument that the report is irrelevant and immaterial, the court observes that the Commission was not competent to adjudicate the issue of reasonable accommodation under the ADA, therefore,

These uncontradicted facts demonstrate that the financial and administrative costs of procuring, training, and maintaining a K-9 dog are significant. The Township would also incur the costs of training Agostino to work with the K-9 dog and purchasing a specialized vehicle for the K-9 unit. Additionally, providing a K-9 dog for Agostino would not address all the safety issues presented by Agostino's anosmia, particularly the ability to smell alcohol, which K-9 dogs are not trained to detect. When these considerations are balanced against the potential benefit derived from Agostino returning to work, the cost is clearly disproportionate to the likely benefit received.

Finally, Agostino offers that he could inexpensively compensate for his inability to smell by utilizing portable devices to detect carbon monoxide, to analyze combustion analyzer, and to test for alcohol. Agostino did not request these particular accommodations, however, it is fair to conclude that the Township's perfunctory response to Agostino's request for a dog indicated to Agostino that the Township was not willing to engage any further in the interactive process. Nevertheless, while some of these aids could respond to some of the concerns raised by Agostino's anosmia, in the important area of detection of the smell of alcohol, Agostino's inability to smell cannot be

---

Stine's opinion concerning the reasonableness of a K-9 dog as an accommodation would not have been relevant or material to that proceeding.

effectively accommodated.

It is not disputed that a Collier Township police officer, patrolling alone, will likely be a first responder in instances where illegal consumption of alcohol could be a factor, such as driving while over the applicable legal alcohol limit or underage drinking.  The Township urges that, in these situations, no reasonable accommodation could compensate for Agostino's inability to detect the smell of alcohol.  The Township contends that an officer can test for illegal alcohol consumption using a portable breathalyzer only after reasonable suspicion that an alcohol offense has been committed is established.  It then submitted five incident reports prepared by Collier Township police officers, all of which noted the smell of alcohol as an indicator of a possible alcohol-related violation.

In contrast, the report submitted by Agostino's expert, James Baranowski, a retired Pennsylvania State police officer and an Accident Reconstruction Specialist, concludes that it is not essential that a first responder be able to detect the smell of alcohol in these instances.  The report observed that there are visual clues to alert an officer that an individual has been drinking such as slurred speech, glassy eyes,  and impaired motor coordination.  The report then states that the odor of alcohol, standing alone, is not sufficient proof of impairment to make an arrest for either DUI or public drunkenness.  Regarding underage

17

drinking situations, Baranowski posits that there is likely to be other physical evidence, such as empty beer cans, linking the offenders to the crime and related an incident when he lost an underage drinking cased based upon the smell of alcohol on a minor's breath when the minor testified that he had been drinking non-alcoholic beer.  In a supplement to his report, Baranowski examined the afore-mentioned Collier Township police reports concerning alcohol-related violations and observed that the most common reason for stopping suspected drunk drivers was a traffic violation, having nothing to do with the sense of smell.  He then noted that, although the odor of alcohol was mentioned in each of the reports, other factors were listed by the officers as indicators of impairment.

Agostino has failed to raise a genuine issue of fact that the ability to smell in instances of possible alcohol-related violations is an essential function of a Collier Township police officer.  The smell of alcohol was listed in each of the incident reports as one of the reasons for suspecting that a violation had occurred.  Additionally, Baranowski's expert opinion diminishing the importance of the ability to smell relies on the possibility that other factors will provide the requisite suspicion that an alcohol offense has been committed.  These factors, such as slurred speech and impaired mobility, may not be present in instances where minimal amounts of alcohol are sufficient to

support a violation, including those involving drivers of school busses and commercial vehicles and underage drinking situations. Additionally, Baranowski's report does not challenge the fact that each and every Collier Township incident report refers to the smell of alcohol as one of the reasonable suspicion factors.

Because the record evidence does not raise a genuine issue of fact that Agostino is incapable of performing the essential police officer function of detecting the smell of alcohol, with or without accommodation, Agostino's ADA and PHRA claim cannot survive summary judgment.[3]

D.   Conclusion

For the reasons stated, it is recommended that Collier Township's motion for summary judgment (Docket No. 31) be granted. Within the time limits set forth in the attached notice of electronic filing, any party may serve and file written objections to the Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto.  Failure to file timely objections may constitute waiver of any appellate rights.

---

[3]   The same analysis controls ADA and PHRA claims. Eshelman v. Agere Systems, Inc., 554 F.3d 426, 433 n.3 (3d Cir. 2009).

Respectfully submitted,

s/Robert C. Mitchell
Robert C. Mitchell
United States Magistrate Judge

Entered: April 12, 2010